LARSEN, Circuit Judge, concurring in part and dissenting in part.
I agree with the majority that the district court erred in applying Connecticut's statutory postjudgment interest rate rather than the federal rate required under 28 U.S.C. § 1961. I also agree that the Connecticut Unfair Trade Practices Act (CUTPA) applies to Powdered Metal's unfair trade practices claim. But I do not think the district court made findings sufficient for us to review its decision that Bosal violated CUTPA. I would vacate that part of the opinion and remand the case for the district court to reconsider the issue and provide more detailed findings.
The district court correctly noted that a CUTPA violation requires: (1) an unfair or deceptive act or practice; (2) an ascertainable loss; and (3) causation. Conn. Gen. Stat. § 42-110(g)(a). Unsurprisingly, "not every contractual breach rises to the level of a CUTPA violation." Naples v. Keystone Bldg. & Dev. Corp. , 295 Conn. 214, 990 A.2d 326, 337 (2010) (quotation omitted).
*411 Instead, liability lies where there is a breach plus some other aggravating circumstance. See Ulbrich v. Groth , 310 Conn. 375, 78 A.3d 76, 101 (2013). The Connecticut Supreme Court has explained: "CUTPA was intended to provide a remedy that is separate and distinct from the remedies provided by contract law when the defendant's contractual breach was accompanied by aggravating circumstances." Id.
In my view, the district court did not make findings sufficient to support its determination that Bosal violated CUTPA. The entirety of the district court's analysis regarding the CUTPA violation-a single paragraph-stated:
Admittedly, aggressive business tactics do not necessarily equal an unfair trade practice. In this case, Bosal's pattern of troubling conduct-for example, its unilateral demands and belligerent posturing regarding the ramp-up and accelerated production-culminated in its wrongful termination of the flange contract. This Court concludes Bosal's actions in terminating the contract rise to the level of unfair conduct. This is highlighted by the two-month delay in notifying [Powdered Metal] that Bosal had switched to a different flange supplier, thus allowing [Powdered Metal] to believe Bosal planned to fulfill the contract. Bosal's actions were clearly misleading and intentional. Because of Bosal's action, [Powdered Metal] was deprived of the remaining value of the flange contract, and it was also prevented from supplementing its business with new orders from other customers.
Bosal Indus.-Georgia v. PM Engineered Solutions, Inc. , No. 3:14 CV 2635, 2016 WL 6216140, at *8 (N.D. Ohio Oct. 25, 2016).
I agree with the majority that we owe deference to the district court's factual findings, especially where, as here, the court held a five-day bench trial in a complex case. See Byrne v. United States , 857 F.3d 319, 326 (6th Cir. 2017). But a close examination of the district court's analysis does not support its conclusion that Bosal's tactics amounted to unfair or deceptive trade practices. Although the district court referenced Bosal's "pattern of troubling conduct" regarding the ramped-up production schedule, the district court had previously concluded, regarding that same conduct, that while it "acknowledge[d] Bosal's aggressive tactics," it did "not find Bosal improperly intimidated [Powdered Metal]." Bosal Indus.-Georgia , 2016 WL 6216140, at *7. The court found that Powdered Metal had "presented no evidence that Bosal threatened any 'illicit action' if [Powdered Metal] refused to comply with its demands, but instead warned [Powdered Metal] that it (and possibly DMAX or GM) would go after [Powdered Metal] with charge-backs or litigation." Id. Finding no "duress" or "improper[ ] intimidat[ion]," the district court found that Powdered Metal "chose to stick it out and continue production." Id. If the district court did not believe that Bosal's actions leading up to the termination were improper and also found that Powdered Metal had agreed to operate under the ramped-up production schedule, how then do these actions support a finding of an unfair or deceptive trade act? The district court did not explain.
The only other "troubling conduct" the district court referenced was that, for two months, Bosal failed to notify Powdered Metal that it had switched to a different supplier. But failing to provide reasonable notice was the breach itself. See id. And a CUTPA violation requires a breach plus aggravating circumstances. See Ulbrich , 78 A.3d at 101 ; see also Boulevard Assocs. v. Sovereign Hotels, Inc. , 72 F.3d 1029, 1038 (2nd Cir. 1995) ("[A] simple breach of contract *412 does not offend traditional notions of fairness ... [and] therefore did not violate CUTPA.") (collecting cases). The district court had to identify some aggravating behavior-beyond its breach of the contract-to find that Bosal violated CUTPA, but none appears. Although the district court concluded that Bosal took some unidentified "actions" that were "clearly misleading and intentional," it failed to explain what they were or how they misled.
The majority suggests three ways in which Bosal might have "intentionally misled Powdered Metal into believing that it planned to fulfill the contract." First, the majority states that Bosal "accept[ed] additional flanges from Powdered Metal" even after it had decided to switch suppliers. Even accepting this as true,[1] where the breach consists of failure to provide "reasonable notice" of termination of an at-will contract, it will always be the case that the breaching party will have continued to behave, until notice is given, as if the contract would be ongoing. That is the breach; something more is required for that breach to become an unfair trade practice.
Second, the majority faults Powdered Metal for communicating its " 'continued support to return to a normalized situation where we can fill the pipeline,' all the while knowing that it had already decided to switch suppliers." But the district court never found that this statement was false or misleading. Indeed, the district court's opinion does not reference this statement at all. And it is not even clear that the statement was made after Powdered Metal had decided to terminate the contract. The email the majority references was sent on October 6, 2014, but the district court found that "Bosal decided to terminate the contract and switch to another flange supplier in mid October." Id. at *7. At the very least, the timing is unclear, and it should be for the district court to clarify.
Finally, the majority suggests that Bosal lied when it "indicated that it was halting production not because of its decision made by that time to terminate the contract, but 'due to the ongoing root cause analysis.' " But, again, the district court did not find that Bosal's statement was false. As to timing, the email referenced *413 here was sent on October 14, 2014, which is not clearly after Bosal's decision to terminate the contract, made, according to the district court, "in mid October." Id. And the district court made no findings that the root cause analysis, which everyone concedes actually took place, was somehow a sham.
In sum, each of the majority's three attempts to fortify the district court's unexplained finding of a CUTPA violation falls short. The district court found that "Bosal decided to terminate the contract and switch to another flange supplier in mid October," id. , but none of the "intentionally mis[leading]" actions identified by the majority clearly took place after that date. The most that can be said in support of the verdict is that the record is unclear. I would accordingly vacate that portion of the district court's opinion and remand for the district court to take another look.
The majority does not believe a remand is necessary. Instead, the majority concludes that "an internal email suggests that Bosal decided to switch suppliers as early as September 19, 2014 and had reached an agreement with a new supplier (SSI) by October 3, 2014." In other words, the majority reasons, the CUTPA violation can be sustained because, on its own reading of the record, Bosal had decided to switch suppliers in mid September, or early October. There is just one problem: that is not what the district court found. The district court found that Bosal decided to switch suppliers "in mid October."[2] The majority does not conclude that this finding was clearly erroneous. But, in order to sustain the district court's ultimate conclusion of a CUTPA violation, the majority substitutes its own findings of fact for those of the district court.
The majority sustains the CUTPA violation by concluding that Bosal had arrived at a final decision to switch suppliers earlier than the district court found. But the evidence the majority cites does not require that conclusion. The September 19 email shows only that Bosal had concerns about Powdered Metal as a supplier and that at least one person was of the opinion they should switch suppliers or start a second source. And while the October 3 email shows that Bosal was in serious talks with another supplier and wanted them to begin certain work, Bosal still clarified in that email what would happen in the event Bosal cancelled this work, suggesting that this new supplier relationship may not have been concrete. All the October 3 email definitively shows is what the district court said regarding this same email, that "Bosal was exploring its options with other suppliers," id. at *4, which surely is not always the same as having reached a final decision to terminate an at-will contract. I do not dispute that, at least the October 3 email could support the finding the majority makes-but it most certainly does not compel it. And so, I do not believe these emails can sustain the majority's implicit conclusion that the trial court's mid-October date was clearly in error.
Here the district court's conclusory finding that Bosal's actions were "misleading and intentional" is insufficient. I would vacate and remand for the district court to identify which statements or actions rose to this level and to explain why, and so I respectfully dissent. Because I would vacate the district court's determination that Bosal violated CUTPA, I would also vacate *414 the district court's award of attorney's fees under CUTPA pending its resolution of that claim.

It is not clear that the district court actually found that Powdered Metal accepted additional flanges after it had decided to switch suppliers. In determining that Bosal had breached the contract, the district court stated:
Bosal decided to terminate the contract and switch to another flange supplier in mid October 2014 after purchasing roughly 34,000 flanges. It provided [Powdered Metal] no notice of any alleged breach at that time. The only possible documented notice of breach that Bosal provided, at any time, was its SCAR reports, dated July and September 2014. But Bosal continued to order and accept additional flanges even after this point. The SCAR reports included no suggestion that Bosal intended to end its contractual relationship with [Powdered Metal].
Bosal Indus.-Georgia , 2016 WL 6216140 at *7. The most natural reading of this passage is that Bosal "continued to order and accept additional flanges even after" the July and September 2014 SCAR reports, not after it had "decided to terminate the contract and switch to another flange supplier in mid October." At a minimum, the passage does not clearly indicate that the district court found the latter. The district court found as a fact that "Bosal last ordered flanges from PMES in October 2014, before the testing was completed." Id. at *4. As record support for this finding, the district court cited testimony referring to an October 13 email, which asked Powdered Metal "to immediately stop machining" and to "confirm when the new batch of material is due to arrive." Even if this email indicates a new order, rather than an inquiry about an existing order, October 13 is not clearly after PMES decided to switch suppliers in mid-October. At best the timeline is uncertain, and I would remand for the district court to clarify.

In one part of the opinion, the district court had stated that Bosal had decided to switch suppliers "by mid-October." Id. at *5 (emphasis added). Later, the district court said that Bosal decided to terminate the contract "in mid-October." Id. at *7 (emphasis added). Any ambiguity is just more reason to allow the district court to clarify.